M. Sylvester KING et al., Plaintiffs,

v.

CIVIL SERVICE COMMISSION OF the
CITY OF NEW YORK et al.,
Defendants.

No. 73 Civ. 4935.

United States District Court,
S. D. New York.

Oct. 2, 1974.

Gary G. Cooper, Messrs. Winthrop,
Stimson, Putnam & Roberts, New York
City, for plaintiffs.

Adrian P. Burke, Corp. Counsel, by Margaret G. Gold, New York City, for defendants Civil Service Commission of the City of New York, Dept. of Personnel of the City of New York; Board of Education of the City of New York, Harry I. Bronstein, Seymour P. Lachman, Joseph Monserrat, James F. Regan, and Isaiah Robinson.

Louis J. Lefkowitz, Atty. Gen., New York City, by David R. Spiegel, Asst. Atty. Gen., for defendant Nyquist.

Frankle & Greenwald, by Leonard Greenwald, New York City, for intervenors.

ROBERT L. CARTER, District Judge.

## OPINION

### Status of the Case Before Trial

Plaintiffs challenge the requirements as set forth in § 3003, subd. 1(a) [1], McKinney's Consol.Laws, c. 16, of the New York State Education Law and regulations (8 NYCRR § 80.4(a)(1)) [2]

1. § 3003. Qualifications of superintendents

    1. No person except one in possession of a valid superintendent's certificate prior to July first, nineteen hundred seventy-one shall hereafter be eligible to the position of superintendent of schools, deputy superintendent of schools, associate superintendent of schools, assistant superintendent of schools or other superintendent of schools or member of a board of examiners in a city school district or as a superintendent of schools in a union free or central school district having a population of more than forty-five hundred, or eligible to appointment to the office of district superintendent of schools in this state, who is not eligible for a superintendent's certificate issued by the commissioner in accordance with the following requirements.

        a. He shall be a graduate of a college or university approved by the commissioner and in addition shall have completed sixty semester hours in graduate courses approved by the commissioner and

        b. At the time of his appointment each shall have completed three years of teaching . . . in public, or non-public schools.

    2. The commissioner of education shall issue a superintendent's permanent certificate to any person who on March twenty-fifth, nineteen hundred thirty-seven, held or was appointed to, a position of superintendent of schools, deputy superintendent of schools, associate superintendent of schools, assistant superintendent of schools or other superintendent of schools or member of a board of examiners in a city as a superintendent of schools in a village having a population of more than forty-five hundred, or district superintendent of schools.

    3. The commissioner, at the request of a board of education or board of cooperative educational services, may provide for the issuance of a certificate as superintendent of schools to exceptionally qualified persons who do not meet all of the graduate course or public school teaching requirements of subdivision one of this section, but whose exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for the duties of a superintendent of schools."

2. 80.4 Certificates valid for administrative and supervisory service (school district administrator, and school administrator and supervisor). A candidate may obtain a permanent certificate for administrative and supervisory service upon completion of a program registered or approved by the department for the preparation of the school district administrator or the school administrator and supervisor. In the alternative a permanent certificate may be obtained upon evidence that the requirements noted below have been met:

    (a) School district administrator (superintendent of schools, district superintendent, district principal, supervising principal, deputy superintendent, associate superintendent, assistant superintendent, member of a board of examiners and any other person having responsibilities involving general district-wide administration shall hold this certificate).

    (1) *Preparation.* The candidate shall hold a baccalaureate degree, based upon a four-year program of collegiate preparation, from a regionally accredited higher institution or from an institution approved or registered by the department and shall have completed in addition 60 semester hours of graduate study and an approved administrative/supervisory internship under the supervision of a practicing school administrator and of a representative of the sponsoring institution of higher education. These 60 semester hours shall include 24 semester hours of graduate study in or related to the field of school administration and supervision. An internship experience carrying graduate credit may be included within the 60 semester hour program. One year of satisfactory full time experience in a school administrative or supervisory position may be substituted for the internship.

adopted pursuant thereto in respect of the minimum requirements necessary for an applicant to be eligible to take an examination for appointment as a member of the New York City Board of Examiners (Board). Plaintiffs also challenge the rules and procedures of the New York City Civil Service Commission (Commission) promulgated and enforced in connection with the administration on May 30 and June 1, 1973, of Examination # 2084 which was held for the purpose of filling three vacancies on the Board of Examiners.

Plaintiffs contend that the Education Law and regulations enacted by the Commissioner of Education (Commissioner) and the entire examination process and procedures as administered by the Commission violate their rights under the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983; and that the statutory and administrative requisites adopted by the Commission for qualifying and testing applicants for appointment to the Board are racially discriminatory, are not job related and, therefore, must be analyzed and validated before any appointments may be made based upon their application.

■ This action commenced on November 6, 1973, and an amended complaint was filed on November 29, 1973. After a hearing on November 20, 1973, a temporary restraining order was issued. While recognizing that plaintiffs had not affirmatively evidenced a likelihood of success on the merits, the court concluded that the "circumstances of the case and the evidence raised a substantial question going to the merits and the balance of hardship tips sharply in plaintiffs' favor." On the basis of this alternate standard, see, Pride v. Community School Board of Brooklyn, New York City District # 18, 488 F.2d 321 (2d Cir. 1973), a preliminary injunction was issued on November 29, 1973. The injunction barred the defendants from

promulgating a list derived from Examination # 2084 and from making use of the educational and experience requirements as set forth in § 3003, subd. 1(a) of the Education Law and 8 NYCRR § 80.4(a)(1) for membership on the Board without such requirements being analyzed and validated. A trial on the merits was contemplated in mid-December, and, therefore, maintenance of the status quo for the short period envisioned seemed appropriate. See Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.) cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

On December 20, Clarence Holmes, Ethel Fitzgerald, Sidney Rosenberg, Jack Bloomfield, Julius Rubin, William Firagold and John F. Maier, among those who had passed the written portion of the examination, were allowed to intervene. Intervenors Holmes and Fitzgerald are black and, along with intervenor Rubin, were the top three on the eligibility list for appointment to the Board as a result of scores obtained on Examination # 2084.[3] The final ranking varied from the initial listing because points were gained by some applicants because of service in the armed forces. In the final listing Rubin, Holmes and Fitzgerald were ranked one, two and three respectively.

The parties were unable to meet the December projected date for trial. After hearing on January 14, 1974, on motion for convening a three-judge court, which was denied, a new trial date of February 15, 1974, was set. While it was felt that neither the City nor persons who passed the examination would be inconvenienced by a short delay in promulgating the list of eligible candidates, it had become clear, however, by mid-January that there would be considerable delay until the trial on the merits. Therefore, the preliminary injunction seemed no longer warranted and it was vacated allowing publication of the eligibility list and standing of those who had

3. The Commission's eligibility list was shown to the court in camera early on in this proceeding.

passed Examination # 2084. Moreover, the City represented that publication of the list would not affect plaintiffs' rights since no action could be taken for 60 days. However, the parties were not ready to go to trial on February 15th. There was a substitution of counsel for plaintiffs on May 1, and the trial on the merits was finally held from June 3 to June 13, 1974.

### The Parties and Contentions At Trial

The Board of Examiners is a statutory body established to administer the licensing of pedagogical personnel in the New York City School system. § 2569, Education Law of the State of New York.[4]

Four members are appointed to retirement age terms by the New York City Board of Education from among those qualified under competitive tests and procedures administered by the Commission and a fifth member comes from the Board of Education staff who serves as a deputy for the Chancellor.

The requirements necessary to take Examination # 2084 were a baccalaureate degree issued on completion of a four-year course of study in a regionally accredited college or in an approved or registered college by the New York State Department of Education; 60 hours of graduate study, which includes 24 semester hours in or related to the field of school administration and supervision; an approved administration/supervisory internship under the supervision of a practicing school administrator; and three years of teaching, administrative, supervisory or pupil personnel service experience in the public schools. (See § 3003, subd. 1(a) and 8 NYCRR § 80.4(a)(1)). During its 75 year history there had never been any black or Puerto Rican members to be appointed or serve

---

4. § 2569. Board of examiners
1. In a city having a population of one million or more there shall be a board of examiners to consist of five members, one of whom shall be the superintendent of schools of the city school district of the city of New York or a deputy superintendent thereof designated by him to act in his stead during his pleasure. No person other than the chancellor, the superintendent of schools, or a deputy superintendent so designated shall, while in the supervising or teaching service of the city, serve on such board. It shall be the duty of the board to hold examinations whenever necessary, to examine all applicants who are required to be licensed or to have their names placed upon eligible lists for appointment in the schools in such city, except examiners, and to prepare all necessary eligible lists, subject to the responsibilities among the members of the board of examiners hereinafter set forth. The board shall periodically review the validity and reliability of examinations as well as examination procedures. It shall hear and determine such appeals as may be authorized by it. It shall perform such other duties as the board of education and the chancellor of said city school district may require. Each member of the board (other than the chancellor or his designee), beginning with the senior member of the board, shall serve as chairman thereof, in rotation, for a period of one year. In addition to his other duties as an examiner, he shall, in accordance with the policies of the board of examiners, be responsible for the administration of the examining function. He shall supervise the board's examining and administrative staffs, and the preparation of the board's annual budget requirements. Should a vacancy occur in the office of the chairman, the next senior member of the board shall fill the unexpired term. If such vacancy is for an unexpired term of more than six months, such member shall not serve as chairman for the year following. The board of examiners may employ temporary assistants at a compensation fixed by the board of education; provided, however, that on and after February sixteenth, nineteen hundred seventy, no person shall be employed as a temporary assistant unless nominated or approved by the chancellor or by a superintendent of schools of a community school district of the city of New York.

For purposes of qualifying teachers for service exclusively within a school district wherein instruction is given bi-lingually, all written and oral examinations provided for by this section shall be given in the English and Spanish . . . language and the applicant at the time of application shall designate the language of his choice, except that a written composition shall be given in English determined by the chancellor [of education of the city of New York] under the policies of the city board of education."

on the Board pursuant to certification as a result of competitive tests such as Examination # 2084.

Plaintiff Sylvester King, a black, along with Nathan Quinones, a Puerto Rican, and not a party to this case, had served as provisional appointees to the Board since the summer of 1972. Their tenure on the Board was to terminate as soon as they had been replaced by appointments from among the list of eligible applicants determined from the results of Examination # 2084. King has a doctorate from Harvard Graduate School of Education and has extensive educational background experience, including an acting principalship in the New York City public school system. While his academic training included school administration and supervision, he was permitted to take Examination # 2084 only on a provisional basis. Decision as to his ultimate eligibility was held in abeyance: Examination # 2084 consisted of written and oral portions. The applicant must pass a written multiple choice and essay portion before he qualifies for the oral. King failed to pass the written portion of the examination. Thus, no final decision was necessary on the question of his eligibility. Thirteen persons, including two blacks and Quinones, survived the written examination.

In addition to Sylvester King, plaintiffs are Clifford C. Coles, black, and Maria Canino, Puerto Rican. Canino has a Master of Science degree from Columbia University and considerable administrative experience outside the field of school administration. Coles has a Master's degree in Social Work and is Dean of the School of Professional Studies at Pratt Institute. They both testified at trial that although they considered themselves qualified and capable of performing properly the duties and responsibilities of a member of the Board, they did not attempt to apply to take the test because they could not meet the 24 semester hours of study in or related to the field of school supervision and administration.

The complaint was initially filed as a class action, but plaintiffs had not complied with Rule 11A of the Rules of this Court and the class action allegations were abandoned at trial. The trial proceeded on behalf of the three heretofore named plaintiffs. A fourth plaintiff, William Schneider, is listed in the complaint, but apparently he has withdrawn since no evidence concerning him was introduced during the trial.

Plaintiffs contend that the education and experience requirements are racially discriminatory; that the 24 semester hour requirement in or related to the field of school administration and supervision and three years public school experience are not related to skills required to perform the duties of a member of the Board. Plaintiffs also contend that Examination # 2084 did not test the skills required for membership on the Board.

*Determination*

1. Defendants raise questions concerning standing status of plaintiffs Canino and Coles, since neither actually applied to take the examination. The evidence at trial clearly established that neither would have been able to qualify to take the examination. Not only do they lack the 24 semester hours of study in school supervision and administration but they also lack three years public school experience, another prerequisite. No variance from these requirements was permitted in respect of eligibility to take Examination # 2084. In discussions between the Commission personnel and a member of the Commissioner's staff, the latter made clear that eligibility requirements would not be modified to enable those "exceptionally qualified persons" to take the examination.

On the basis of these facts, Canino and Coles cannot be denied standing for failing to do a futile act. The fact that King was found provisionally qualified and allowed to take the examination does not undercut this conclusion.

Being a provisional member of the Board may have had some effect on his being allowed to take the examination. Indeed, from the evidence in the record, King was not in the clear in respect of qualifying to take the test, and if he had not failed the examination, he could have been eliminated nonetheless as not meeting all the prerequisites.

Canino and Coles possess sufficient qualifications in administration, supervision and education to legitimate their questioning the requirements at issue in this case without the need to go through the charade of applying to take the test when refusal seems evident. See, Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); National Student Ass'n v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1110 (1969).

2. The vast portion of the evidentiary proof in this case goes to the job-related character of the examination. Before that evidence can be considered, however, it must first be established that the examination has had "a racially disproportionate impact." Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Commission, 482 F.2d 1333 (2d Cir.), aff'g in part and rev'g in part 354 F.Supp. 778 (D.Conn.1973); Chance v. Board of Examiners, 458 F.2d 1167 (2d Cir. 1972), aff'g 330 F.Supp. 203 (S.D.N.Y.1971).

In an attempt to meet the latter issue, plaintiffs introduced evidence showing that as of 1973, about 5% of the total number of persons enrolled in graduate schools of education in the United States were black, and 1.6% were Hispanic; that in 1970, 6% of the nation's teaching force was black and 2% Hispanic, and in 1973, these groups had the same respective percentage of the nation's teachers with three or more years of experience; that in 1970, 3.6% of New York State public school teachers were black and 0.3% were Hispanic; that in 1973, the percentage of black and Hispanic teachers in New York State with three years or more experience was 4.5% and .7% respectively; and that in 1970, blacks and Hispanics approximated 7.8% and 1.3% of the total number of teachers in the New York City school system.

To conclude from these figures that a "racially disproportionate impact" exists in respect of a requirement for eligibility to take an examination that the applicants must have 60 hours of graduate study, including 24 hours in or related to the field of school administration and supervision, plus three years of teaching in the public schools is not too long a step. The Board of Examiners for 75 years has had no minority group members. Its membership has come from eligibility lists issued after examinations such as the one in this controversy. There are no figures available on the percentages of blacks and Puerto Ricans taking prior examinations, and how they fared. It should be clear if common sense is at work, that the more stringent the educational standards, the narrower is the reservoir of available non-white minorities. Moreover, there is nothing in this record to convince me that 24 semester hours in or related to the field of school administration and supervision or three years public school experience are essential to the performance of the responsibilities on the Board.

Yet, it cannot be said on the basis of this record that either of these requirements falls more heavily on blacks and Puerto Ricans than on whites. While the fact that three members of these groups passed the examinations, and two of these ranked No. 2 and No. 3 on the final qualifying list, is not conclusive, it is difficult in the light of these results to find a "racially disproportionate impact" based solely on the general percentage figures introduced into evidence.

■ After the trial was concluded, the Board of Education proceeded to appoint Rubin, Holmes and Fitzgerald, the first three on the list to the Board. Thus for the first time in the history of the Board blacks have secured appointment on the Board pursuant to certification resulting from competitive tests. These appointees have tenure until retirement and, whatever the merits of

**1134**

plaintiffs' contention of racial discrimination, these appointments have eliminated that issue to a point not capable of repetition and yet evading review, *see*, Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), in the foreseeable future. At best, the case has, therefore, been rendered moot.

Accordingly, the complaint must be and is dismissed as moot.

So ordered.